The next case today is Bailey's Campground, Inc. et al. v. Janet T. Mills, appeal number 201559. Mr. Smith, please proceed. May it please the court, good morning. With the court's permission, I would like to first request that I can reserve three minutes for rebuttal time? Yes. Thank you. The right to travel from state to state is deeply rooted in our nation's history, and it's played an important role in turning many states into a single nation. It is the Supreme Court has recognized- Mr. Smith, excuse me. Give us a little credit. I think we all understand that there is a constitutional right to travel and what it is. Tell me, if you will, why this appeal isn't moved? This appeal isn't moved under the voluntary cessation exception. No, no. The voluntary cessation exception may explain why the action isn't moved. But why isn't this appeal moved? There's nothing to issue a preliminary injunction against. Well, I would- I agree with you that the action may not be moved, but that question isn't before us. The question before us is whether the preliminary injunction is moved. And it seems to me that there's nothing to preliminarily enjoin. What there is to preliminarily enjoin, Your Honor, is the governor's authority, which she has reserved to herself to restore her earlier approach, which would be consistent with what the Seventh Circuit decided in the Elam Pentecostal Romanian Church case, where that was also a case on an appeal from a preliminary injunction where the same argument was made. And what the Seventh Circuit concluded in that case was that because the governor had reserved the authority to restore her earlier approach, she could reinstate her earlier restrictions just as easily as she had repealed them. And that's the same situation we have in this case. Now, one issue about the right to travel that I think is particularly important to keep in mind- Before you move on to the merits, just on the mootness issue, this isn't a typical voluntary cessation case in the sense that the reason that there was a cessation of the public health situation and amendment in response to that. So I would have thought it would be of some relevance how likely it is that the particular order that you want enjoined is to be reinstated. And the mere fact that she hasn't completely disavowed it doesn't seem to me, under the case law, to demonstrate that in a situation in which the world has changed, we should just assume that there would be an order like this, which was an order in which anybody knew whether there could even be testing. You want to enjoin an order where there's no testing exception, but what basis do we have for concluding that there's any likelihood that there would be a new order that would not even have a negative test exception? There are a few parts to your question, Your Honor, and I'd like to try to break that down. First, with respect to testing, I would respectfully submit that the existing of testing doesn't necessarily cure the issue in this case, although it's a different challenge. The challenge you want, you want an injunction against somebody that has no testing exception. That's correct. I think there could be an argument that the testing exception doesn't necessarily cure the constitutional flaw, but I recognize your point on that. The issue under the voluntary cessation doctrine, the governor bears the burden of proving that it is absolutely clear that it's unlikely that she will return to her earlier ways. I don't think she's done that on this record with this issue that has arisen during the course of the appeal. Certainly, as far as testing is concerned, we see situations where there are testing backlogs. We're moving into the school season, so one might expect that the need for testing within the state of Maine is going to increase. The governor hasn't disavowed her authority to move back to the earlier restrictions. One issue here that I think is particularly important with the right to travel is that the right to travel is particularly susceptible to state interference. That's because right to travel restrictions typically befall non-residents to whom the responsible state government is not politically accountable. I think in this case, the district court did correctly determine that the first two components of the right to travel were impacted. I'd like to talk for a moment about the governor's argument that this case should be reviewed under the Jacobson versus Massachusetts standard. As Justice Alito recently stated, it would be a mistake to construe Jacobson as providing the last word on what the Constitution allows state governments to do during the COVID-19 pandemic. Nowhere in Jacobson does it say that a public health emergency operates to suspend heightened judicial review when individual rights are at play. Instead, it's consistent with centuries of history from the Supreme Court stating that the Constitution applies at all times and in all circumstances. Now, looking at Jacobson itself, context matters, especially when you're talking about a 115 year old case decided during the progressive era. I thought the district court didn't rely on Jacobson and just applied strict scrutiny but concluded that there was a compelling interest, that it wasn't clear that you could win on the likelihood of success even if we accepted everything you're now saying about Jacobson. That's correct, Your Honor, and the reason why I'm getting into this is because... Can you just address that part? Put Jacobson aside for the moment and just address what the district court ruled against you on. Certainly, Your Honor. Well, the district court in this case had held that given the preliminary state of the record, the governor had met her burden of establishing that the 14 day quarantine was necessary to promote a compelling government interest. And I would respectfully submit that the record in this case does not demonstrate that the 14 day is a necessary evil. In Dunn, the Supreme Court explained in the right to travel context, once again, that if there are other reasonable ways to achieve the compelling government interest that are less burdensome on travel, the government has the responsibility to use those less restrictive means. And if we look at the record that was submitted, the governor has all but admitted that the 14 day quarantine is an overbroad restriction. Dr. Shaw admitted that in his declaration regarding the effort to err on the side of caution. Mr. Langhauser admitted that... I understood that to be all just some version of the precautionary principle, that in a given the gravity of the harm, they did something broader, but that doesn't show that there was something narrower that they could have had confidence in doing or that a court should require them to take the risk that the narrower thing would work. What's your support for that? That's what I thought the thrust of the district court to view was, which is that it was an emergency. There was a difficult choice to be made. And this was, in light of those circumstances and the uncertainty of the moment, enough of a calibrated response, even though no one could say for sure it wasn't overbroad. I don't read the record as saying that the governor was forced with an impossible choice and she was simply choosing the lesser of two evils. This isn't a case about the battle of two experts. This is a case about failure of proof. And nowhere in the record did the governor make the case that a 14-day quarantine would be necessary to preventing Maine's hospitals from being overwhelmed. Nowhere did she show that quarantining only those who are traveling from areas experiencing a high prevalence of the virus would be an unworkable solution. And nowhere did she show that allowing travelers to quarantine at least in their home states during the 14-day period would be insufficient. So in the end, the district court's decision didn't rest on principles of scientific uncertainty. It rested on principles of the lack of a fully factually developed record, which should have weighed in our favor. Why should the lack of a fully developed factual record weigh in favor of the party who's seeking preliminary injunction relief? I've always thought it's the proponent's burden to establish a likelihood of success on the merits and to develop the record to the extent where  it's likely to prevail. That's correct in most circumstances, Your Honor. When you're dealing with strict scrutiny, however, even if the Supreme Court has held that even at the preliminary injunction stage, once the proponent establishes that a law implicates strict scrutiny, the burden shifts. And at that point, the proponent of the preliminary injunction is deemed likely to prevail unless the government comes forward with evidence affirmatively demonstrating that whatever it is they've done is necessary to further a compelling governmental interest. The difficulty here is those cases are not emergency cases, unless you have some. Emergency cases in which the actor who's making the decision to protect people necessarily has limited facts. So the 14 days is calibrated to what was known then about the incubation period, and there was a high degree of uncertainty as to how to best respond and handle it. It was by design a temporary measure and time limited, which I would think goes to its calibrated nature. What do you have in terms of authority that suggests the record that was presented here is not enough to support the kind of decision given the exigency of the moment that was made? Well, this is, as Judge Walker recognized below, this is a very unique case. So certainly we don't have anything that's directly on point in terms of dealing with this exact situation, but the Supreme Court has repeatedly held that even in times of emergencies, the Constitution applies equally. And I would respectfully disagree with the characterization of the executive order is time limited. There was no sunset in terms of when the 14 day quarantine would be lifted. When you look at the governor's reopening plan, it contemplated a 14 day quarantine persisting throughout the months of, or throughout the entire summer. There was a stage four indicated in the reopening plan. There was nothing indicating that the 14 day quarantine would be lifted or changed at that point. So I don't believe this was a time limited measure as has been suggested. How long did it last for? Pardon me? How long did it last for? 65 days, your honor. It was rescinded shortly after we filed the notice of appeal. And I do want to touch a little bit further on the scientific uncertainty issue because that was something that the district court also cited in its opinion. And Chief Justice Roberts referred to this in his South Bay Pentecostal concurrence. Now, again, this isn't a case about a battle of the experts, but about a failure of proof. You've said that twice now, counsel. I just want to ask you a question about one of the other standards for reviewing the grant of a preliminary injunction or denial of a preliminary injunction. And it goes to this. It seems to me most of what we've been talking about is whether you have a case on the merits. And you may well have a case on the merits, but one of the factors for preliminary injunction is the public interest. And at the time that this was in place and under the circumstances that it comes to us on appeal, with all of the unknowns that existed at the time, I'm failing to see what the argument is that the public interest in the framework that we have to look at it. Well, I think the public interest, your honor, it would be contrary to the public interest to allow the state of Maine to perpetuate the constitutional violation. And if the district court had concluded that we had a substantial likelihood of success on the merits, it would have been in the public interest for the court to enjoin Executive Order 34, which would have allowed the governor an opportunity to reconsider that Executive Order and perhaps come up with something less restrictive that would meet the strict scrutiny test. But the paramount public interest here has got to be the health and safety of the citizens, right? I understand your clients have rights, but so do all the citizens and residents of I'm sorry, Judge Salia, my video froze for a second. I'm just suggesting, I think Chief Judge Howard's question is apropos, because it seems to me that the very paramount consideration in terms of injunctive relief here has got to be the That's clearly got to be weighed in the preliminary injunction calculus, and that counsels in favor of taking preventive action, reasonable preventive action, based on what skimpy knowledge the governor had when she had it. I agree with you, your honor, that that is an important aspect of the public interest in this case. Well, then what are we to make of your claim that the problem here is a failure of proof? That's why the public, the way I see it, that's why the public interest weighs the other way is because of the unknowns that were in place. That's the only point I'm trying to make. I think my response to that, your honor, is the fundamental objective of the 14-day quarantine is to safeguard Maine's hospital capacity, and nowhere in the record did the governor say that in the absence of the 14-day quarantine, it is likely or even reasonably expected that Maine's hospital capacity is likely to be exceeded. She simply offers a boilerplate language about the nature of the spread of COVID-19, which we agree is a serious issue and represents a compelling government interest, but she never linked that to the actual necessity of the 14-day quarantine, and that's really our point on why she failed the strict scrutiny test, especially when you compare the approach in Maine with approaches that have been taken in other states where they've effectively controlled the virus to levels that are consistent with what we have in the state of Maine. Maybe just as a final point, if I may, I think it's important that the governor is asking you to bless here. With her reading of Jacobson, she's telling you that she has the power to effectively suspend constitutional rights, be it travel bans, closing churches, banning protests, so long as they may have an effect on the spread of COVID-19. But as Mr. Tarrant pointed out, the district court didn't rely on Jacobson at all in granting the injunction. And I agree with that, Your Honor. And there was no requirement that we, there's no assurance that we would rely on Jacobson even were we to reform the denial of the injunction. And I agree you shouldn't, Your Honor, but I'm simply covering my bases because... Can I ask you one final question about a prong we haven't yet talked about? Which is the hardship prong? One way to understand the preliminary injunction standard is obviously the likelihood of success prong matters a great deal, but so do the other prongs in an overall way. In addition to the public interest issue that we've discussed, I'm having a little trouble seeing what the hardship is, especially given the fact that the restriction is no longer in place, even if that means it's not moved. What is the need for there to be injunctive relief on the speculative possibility that it might come back in place when the action could still go forward if you want to get a declaratory relief, if you want to get damages for what happened, all of that could still be litigated out. What is the need for an injunction right now? Well, I think the need for the injunction, Your Honor, is the district court has already concluded that the governor's earlier approach is constitutional. Given the fact that she has retained the authority to re-implement those kinds of restrictions, I think that leaves us in a position where if she were to do that, we would be functionally stuck with... Yeah, but what I'm asking you is suppose the 29th order, which approved that... Even if the district court was hypothetically wrong in that point, or that aspect of the case, for you to get the injunction, you still have to satisfy the hardship problem. That's... So that's the hardship in that circumstance. If all that was held is, given that the order is no longer in place, given how speculative it is that it will ever come back into place, given that the action itself is not moved, the particular thing that occasions this appeal, which is a request for an injunction, could be rejected on the absence of any showing of hardship, and you'd be no worse off, would you? Well, I think we would be worse off, Your Honor, because the governor would still have the authority to return to her earlier restrictions, and at least judged as of the time that we filed the notice of appeal. That alone is just the mere possibility of that happening, is the hardship? Well, I think it's in effect similar to a prior restraint, where the governor has the ability to shift back, and if she were to hypothetically do that, I'm not sure that we would have the ability to necessarily move forward to appeal Judge Walker's May 29th order at that point, where he already ruled that that approach is constitutional. No, he didn't, excuse me, that's the third time you've said that, and that's not what Judge Walker ruled. Judge Walker ruled that for preliminary injunction purposes, he would regard it as constitutional. Our case law is crystal clear that that means he thinks the state is likely to succeed on showing that it is constitutional, but it is a predictive ruling, not a final ruling by the district court on constitutionality. I appreciate that clarification, I agree with that characterization of the order, Your Honor. All right, Mr. Smith, if you could go ahead and mute, and we'll hear from Mr. Taub. Thank you. Good morning, and may it please the court. There was a much different way that plaintiffs could have litigated this case if they were interested in getting relief from the travel restrictions, so the original executive order that they're challenging was repealed and replaced with a new order back on June 9th, and so it would have been a very straightforward process for the plaintiffs to, instead of going up on appeal to this court, they could have easily returned to district court and created a new record and a new set of facts and made an argument that the new travel restrictions are still in violation of the right to travel. Well, that may be so, Mr. Taub, but the plaintiff's got the right, within reason, to litigate his case the way he wants to litigate his case, and the fact of the matter is, unless you're prepared to tell us that this appeal is now moot or there is some other defect in this proceeding, then we've got to tackle what he's put before us and answer the questions he's put before us, not envision some alternative scenario. I completely agree, Your Honor, and what I was leading up to is the argument that this both the case is moot and the request for the injunctive relief is moot. We now have an order that doesn't exist anymore. It's been rescinded, but the plaintiffs are still seeking an order in joining enforcement of that order, and so even if the court were to entertain this appeal, and even if the court were to enjoin enforcement of an order that doesn't exist anymore, that wouldn't provide any effective relief to the plaintiffs. Is the plaintiff correct when he tells us that the governor has reserved the right to reinstate the order? Well, I would say that the governor has never expressly said, you know, I reserve the right to reinstate that exact order. I think what the governor has been very consistent about is that she is constantly evaluating the conditions on the ground. She's constantly consulting with public health experts, and she is going to make whatever modifications she thinks are necessary to protect the public health. So just for an example, if it turns out that there's a sudden case or a sudden spike of COVID cases in New York, for example, she may well remove New York from that exemption. So it's certainly possible in the most hypothetical, theoretical way that we could end up back again with an order that's exactly like the order that's at issue here, but I think what's far more likely is that to the extent that the governor does impose new restrictions and sort of dials back for what's in place now, that we're going to see some other formula. We're going to see some other formula that has been specifically adapted to address the conditions. But I think that the other important thing to keep in mind, your honors, is that just assume for the sake of argument that the governor were to implement the exact same order in the future. That order is going to be based on a different set of circumstances. It's going to be based on a different set of facts than we have presented in this case. So for this court to entertain an appeal of an order that is likely never going to exist again in the future in its exact form, and it's going to be based on a completely different set of facts, that just seems like it's not a wise use of anyone's resources. Just the only thing that concerns me about the account, which each step of it makes sense, but if I follow it, you effectively could never enjoin emergency action of this type, no matter how much it infringes on constitutional rights. Isn't that right? I don't think that's true, Your Honor. Well, why wouldn't it always be moot? As long as the governor retained the power to change it, when there was some change in the world, you would say each time, well, now it's moot because the new one you change is going to have a new record. So effectively, you could never get injunctive relief from any emergency action. Well, Your Honor, I guess I would disagree with that because these orders aren't something that just are in effect for a few days and they get replaced with something different. But they're not in effect long enough to go all the way through our appeals process. Well, I would disagree with that. I mean, I think that they're certainly in effect long enough to get relief in front of the district court. And so we have had at least two cases now where the district courts have entertained orders that were in effect. Now, whether or not there'd be enough time to go up to this court, I think certainly plaintiffs could seek expedition of the appeal. I think this court, in the right circumstance, would likely consider agreeing to hear something on an extremely expedited basis. So I guess I would disagree that these are the kinds of orders that one can never obtain review on. So your idea is you can only get district court review? No, I think, Your Honor, that a plaintiff who goes to district court and loses would still have enough time if this court were agreeable to entertain the appeal, to have this court resolve it. And the other thing I'd like to point out, Your Honor, is yes, the previous order was in effect, I believe, from April 3rd until June 9th. So what's that? Roughly two months. But this current order has already been in effect for three months. And there's no indication that it's going to be changed anytime soon. So I think it would just be speculation. Just because one order was only in effect for 60 days, I think it would be speculative to assume that this current order is going to have some kind of limited lifetime. I mean, yes, it certainly is going to be changed at some point. There's no doubt about that. But I think, again, there's plenty of time to obtain both district court review and appellate court review. I'd just like to, I guess... Well, no, just before you leave that point, if the state of Maine goes back to something very close to what the challenged action here is, that would not likely be in place very long, because that was under dire circumstances. And so that seems to me that's the problem. It's not the current regime that may be in place for a while. It's if they go back to this regime that was only in place for a short period of time. And doesn't that provide an exception to the mootness doctrine, as it were, that those issues with respect to the prior regime, which may come into place for a short period of time in the future, would not be around long enough to have full litigation? So I think to the extent that your honors, I mean, the appellants are sort of relying on two exceptions. There's the capable of repetition yet evading group review on, which I think is perhaps the one that your honors is referring to. And I think the problem with that exception is there has to be a reasonable expectation that the same complaining party is going to be subject to the same action. And so I think the same action part is where the appellants run into a problem. Because as I said before, there's no reasonable expectation that the current executive order is going to be replaced and we're going to roll back to the one that was in place before. I don't understand. All that it would take would be an upsurge, wouldn't it, in the COVID figures? Well, exactly. And the governor would certainly take some type of action, whether this exact action may be debatable. But I think what the test is for the capable of repetition yet evading review is, is it going to be the same action, not some kind of similar action? At this point, it's impossible to predict what, I mean, to be clear, yes, if conditions get worse, the governor is likely to make changes and not necessarily with the travel restrictions, but she could make restrictions in other ways. But quarantines have been imposed and reimposed in respect to COVID in several of the other states impose a current quarantine. Things are very bad in New York and New Jersey. So Rhode Island and Massachusetts and employee put in effect quarantines against people from that state. Things get better. Quarantines get relaxed. Figures go up. Quarantine goes back in place. I mean, that's historically that patent has been played out in several jurisdictions in the country. So it's not at all improbable. So I think the issue, Your Honor, is that unless this court is prepared to entertain the idea that a quarantine requirement in these circumstances is never constitutional, I mean, unless the court is prepared to go that far and say that there are no circumstances under which a state facing a COVID pandemic can implement some kind of quarantine requirement, then any other kind of analysis the court does, assuming it gets to strict scrutiny, is then going to get into the exact fit between the precise measures that the governor implemented and the actual conditions that are on the ground. And so to hypothesize or to speculate that back when the original executive order in this case was entered, even if the court were to say that that order doesn't survive strict scrutiny, I'm sorry. The effect of your argument, though, is to suggest that that initial emergency action, when the risk to public health is most dire, is effectively unreviewable. Because it will be mooted every single time. Because by its nature, it's a temporary action. And you're exactly right. The next time it comes up, the world will be a little bit different. We'll know a little bit more. The disease might have gotten worse. It might have gotten less. It will be a different factual record. But the consequence is to them, if we rule that way, to effectively say you have 60 days to do what you want as governor, because we'll never review it. Well, so I guess, Your Honor, I may not be following the question exactly, but I still want to push back a little bit on the idea that 60 days isn't enough time to obtain both district court and appellate court review. I think if this court were concerned that a state somewhere was tromping upon people's constitutional rights. We've held that for purposes of capable of repetition, yet evading review, two to three months is not enough time to preserve all of your review right. So, I mean, we'd have to backtrack on that just in terms of what our doctrine says about the timeline. But I keep going back, and I apologize if I'm not making this clear or if I'm not fully understanding the court's questions. But I think the point of the capable of repetition, yet evading review, those are cases where the exact same thing is going to happen in the future. So, for example, you have some kind of abortion restriction, and yes, the case becomes moot because the woman has had her baby. But we know that there's going to be a lot of other women that are going to be coming forward and facing the exact same restriction. And so, that's a much different case here. Like, just for example, you know, suppose that the order gets modified because questions arise over the efficacy of the COVID screening tests. Or, you know, suppose that there's some shift in infection rates in different states. Any kind of case like that is going to require the court to delve into the specific facts. And so, I'm not sure how it would help for the court just to speculate on whether or not a previous order that was based on a historical set of facts that may never again be repeated is constitutional or not. Because even if the court were to hold that Executive Order 34 was unconstitutional, doesn't survive strict scrutiny, that's going to say nothing about the next order that imposes a different set of restrictions based on a different set of facts. Go ahead, Judge. I would imagine it would have some impact on how the Attorney General advises the governor about her next order. It definitely would, Your Honor. It certainly would have some impact on the claim for damages that's pending in this case. So, I would definitely agree that if this court were to issue an opinion, it's very well conceivable that that opinion would help guide us in advising the governor as to what might pass scrutiny and what might not. But that's really nothing more than an advisory decision at that point. At that point, the court is really doing nothing more than giving advice to the state and the other parties about what would and what might not pass constitutional scrutiny. And I just don't think that's a justiciable issue at that point, Your Honors. Well, what about the point that Judge Shelley just made about the damages action? Your position is that the damages action is moving also. Well, I don't know that... I have to go back and I confess that I haven't looked at the complaint in a while, but my memory... There is a claim for damages in the case. My memory is that this is an action against the governor only in her official capacity, and I may be wrong about that. But I think the damages issue anyway is a completely separate issue. If this case is moot with respect to prospective adjunctive relief, that doesn't mean that it's moot with respect to a damages claim. There is still effective relief. If the plaintiffs want to prove that the old executive order interfered with their constitutional rights and resulted in damages, that case is not moot. Okay. The only other thing I wanted to say, Your Honor, and this is just because Mr. Smith referred to a few times as a battle of experts, there was no battle of experts here because there was only one side of experts. I mean, we submitted a very detailed declaration from the head of the main CDC, who's a public health expert, years of experience in public health, and he didn't just make sort of broad statements that this is the best we can do at this point, and this is the only way to He went through in detail, first of all, why the 14-day quarantine, why it's 14 days, because that's tied to the incubation period. He explained all the other things that were considered but rejected. For example, screening people's temperatures was not going to be effective. Saying that you can't come into the state if you've been exposed to someone, he explained why that wouldn't be effective. And I also want to push back on the idea that he didn't really outline why there'd be such an impact on the state. He put forth a series of facts about what a limited healthcare system the state has. I mean, we are a state of 1.3 million people with a healthcare system designed for that. We have a small number of critical care beds, a small number of respirators, and when this original order was implemented, we were going to be facing an influx of people visiting from other areas in previous years, as many as 20 million people coming into the state. And so I just want to push back on the idea that we didn't sufficiently demonstrate our case. I think the basic problem here is that we presented all these facts, supported by a declaration, and the plaintiffs didn't offer anything to rebut any of those points. And unless there are no further questions, Your Honor, I don't think I have anything else to address. All right. Thank you, Mr. Tubbs. We'll be seeing you again. If you would please mute. Mr. Smith, you have a little rebuttal time. Thank you, Your Honor. I guess I'll begin where my brother ended with discussing the state of the record and the declaration from Dr. Shah. While I take the point about the battle of the experts as we speak, the problem that we see with the record in this case is there was no demonstration of what was likely to happen in the absence of a 14-day quarantine. And I don't think the record stands for the proposition that there was so much uncertainty about what would happen in the absence of a 14-day quarantine that they had to take that step in order to prevent failure of the health care system. And then going back to some of the points that were made earlier, the... What's your best piece of record evidence to support what you just said? Well, I think it's Dr. Shah's statement that it was an effort to err on the side of caution in his declaration, which was in paragraphs 43 and 44, where he's essentially explaining that that's the strategy that they've chosen. And from a public health perspective, that may be perfectly appropriate. But when you're dealing with a situation where the restriction is placing a burden on a fundamental constitutional right, the burden on the governor is to demonstrate the necessity of that restriction in promoting a governmental interest. And then again, back as to the mootness issue, again, we were dealing with a restriction that was in place for 65 days. I think it was rescinded 25 days after we filed our lawsuit. And I think it is a situation where if you dismiss this appeal as moot, litigants who face, who challenge emergency restrictions are going to be caught in a catch-22, where they're not able to fully litigate anything, and then it'll get potentially mooted whenever the emergency ends. In terms of the actual time, with respect to the capable of evading review, or capable of repetition but evading review, the Supreme Court has held that six months is not enough time to get out of that doctrine. So I would suggest the time frame in this case supports application of both of the exceptions to the mootness doctrine that we've discussed. All right. Thank you both. Thank you. We'll take this case under advisement.